# Appendix of Unpublished Decisions

In re Sheridan,
2009 Bankr. LEXIS 552 (March, 2009)

Residential Funding Co. LLC v. Saurman,
2011 Mich. App. LEXIS 719 (Mich. App. April 2011)



IN RE DARRELL ROYCE SHERIDAN, SHERRY ANN SHERIDAN, Debtors.

Case No. 08-20381-TLM, Chapter 7

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF IDAHO

*2009 Bankr. LEXIS 552*

March 12, 2009, Decided
March 12, 2009, Filed, Entered

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Debtors filed a petition under Chapter 7 of the Bankruptcy Code, and movant nominee filed a motion under *11 U.S.C.S. § 362(d)*, seeking relief from the automatic stay that was imposed when the debtors declared bankruptcy. The Chapter 7 trustee filed an objection to the nominee's motion, claiming that the nominee failed to establish its interest in the property in question or its standing to seek stay relief.

**OVERVIEW:** The debtors declared bankruptcy in June 2008, and they scheduled a fee ownership interest in a residence they claimed as their homestead. The debtors received a discharge on October 3, 2008, and on October 16, 2008, a company that claimed it was the nominee for an investment trust and a bank that held a deed of trust on the property filed a motion for relief from the automatic stay. The trustee filed an objection to the nominee's motion, claiming that the nominee was not a party in interest and did not have standing to seek relief from the automatic stay because the investment trust and the bank did not have a right to enforce payment of the note. The court found that the nominee failed to establish it had standing. The nominee provided no evidence that the investment trust or the bank had any interest in the note and deed of trust. Instead, the documentation provided by the nominee showed that a mortgage company the nominee did not represent held legal interests in the note and deed of trust. The court refused to consider an affidavit which the nominee's counsel filed after the court

held a hearing on the motion.

**OUTCOME:** The court sustained the trustee's objection to the motion, stated that the motion would be denied, and ordered the trustee to provide a proposed order for the court's review and entry.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Procedures*
*Bankruptcy Law > Practice & Proceedings > Contested Matters*
[HN1] A "final hearing" is contemplated under *11 U.S.C.S. § 362(d)* and *(e)*. That it would be an evidentiary hearing is a result of the presence of material, disputed facts, which under *Fed. R. Bankr. P. 9014(d)* requires testimony in the same manner as in an adversary proceeding.

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Duration*
[HN2] Under *11 U.S.C.S. § 362(e)(2)*, the stay that is imposed when a debtor declares bankruptcy generally terminates on a date that is 60 days after a request is made by a party in interest if the case is one under Chapters 7, 11, or 13 of the Bankruptcy Code and the

2009 Bankr. LEXIS 552, *

debtor is an individual. However, that period may be extended by agreement of the parties or by the court for good cause. *11 U.S.C.S. § 362(e)(2)(B)*.

***Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Cause***
***Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Equity***
[HN3] Under the Bankruptcy Code, relief from the *11 U.S.C.S. § 362(a)* stay is authorized on request of a party in interest and after notice and a hearing. *11 U.S.C.S. § 362(d)*. One ground for stay relief is "cause," including the lack of adequate protection of an interest in property of such party in interest. *11 U.S.C.S. § 362(d)(1)*. Another ground for stay relief with respect to acts against property is an absence of equity in such property coupled with a lack of necessity of such property for an effective reorganization. *11 U.S.C.S. § 362(d)(2)*.

***Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Procedures***
[HN4] The Federal Rules of Bankruptcy Procedure require that a stay relief request be made by a motion. *Fed. R. Bankr. P. 9013* provides that a request for an order, except when an application is authorized by the Bankruptcy Rules, shall be by written motion, unless made during a hearing, and *Fed. R. Bankr. P. 4001(a)(1)* provides that a motion for relief from the automatic stay provided by the Bankruptcy Code shall be made in accordance with *Fed. R. Bankr. P. 9014*. In addition to the Federal Rules of Bankruptcy Procedure, the U.S. Bankruptcy Court for the District of Idaho's local rules require, inter alia, that the request shall be made by a party in interest and by motion, that the motion provide the details of the underlying obligation or liability upon which the motion is based, and that the motion have attached accurate and legible copies of all documents evidencing the obligation and the basis of perfection of any lien or security interest. Bankr. D. Idaho R. 4001.2(a), (b)(2), and (b)(5).

***Bankruptcy Law > Practice & Proceedings > Jurisdiction > General Overview***
***Civil Procedure > Justiciability > Standing > Personal Stake***

[HN5] While the term "party in interest" is not defined by the Bankruptcy Code, the U.S. Bankruptcy Court for the District of Idaho has held that such a party must have a pecuniary interest in the outcome of the dispute before the court.

***Bankruptcy Law > Practice & Proceedings > Jurisdiction > General Overview***
***Civil Procedure > Justiciability > Standing > Personal Stake***
***Constitutional Law > The Judiciary > Case or Controversy > Standing > General Overview***
***Evidence > Procedural Considerations > Burdens of Proof > Allocation***
[HN6] The doctrine of standing encompasses both constitutional limitations on federal court jurisdiction (i.e., the case or controversy requirements of Article III of the U.S. Constitution), and prudential limitations on the court's exercise of that jurisdiction. Constitutional standing requires an injury in fact, viz., an invasion of a judicially cognizable interest. Prudential standing requires that a party's assertions fall within the zone of interests protected by the statute and, further, requires that the litigant assert only its own rights and not those of another party. A party who asserts that standing exists has the burden of proving it. Though sometimes articulated in the cases as principles applicable to standing on appeal, the same propositions apply to a party at the bankruptcy court level. In In re Simplot, the U.S. Bankruptcy Court for the District of Idaho concluded that parties may not assert objections that relate solely to others, or that go to issues that do not directly and adversely affect them pecuniarily.

***Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Commencement***
***Civil Procedure > Parties > Real Parties in Interest > General Overview***
[HN7] Under *Fed. R. Bankr. P. 9014*, which by virtue of *Fed. R. Bankr. P. 4001(a)(1)* governs stay relief requests, certain "Part VII" rules are applicable. *Fed. R. Bankr. P. 9014(c)*. Among those incorporated rules is *Fed. R. Bankr. P. 7017*, which in turn incorporates *Fed. R. Civ. P. 17*. *Rule 17(a)(1)* provides that an action must be prosecuted in the name of the real party in interest.

***Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays >***

2009 Bankr. LEXIS 552, *

**Procedures**
**Civil Procedure > Parties > Real Parties in Interest > General Overview**
[HN8] The real party in interest in relief from the stay that is imposed when a debtor declares bankruptcy is whoever is entitled to enforce the obligation sought to be enforced. Even if a servicer or agent has authority to bring a motion on behalf of the holder of a note, it is the holder, rather than the servicer, which must be the moving party, and so identified in the papers and in the electronic docketing done by the moving party's counsel.

**Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Procedures**
**Civil Procedure > Justiciability > Standing > Personal Stake**
**Civil Procedure > Parties > Real Parties in Interest > General Overview**
[HN9] To obtain stay relief in a bankruptcy case, a motion must be brought by a party in interest, with standing. This means the motion must be brought by one who has a pecuniary interest in the case and, in connection with secured debts, by the entity that is entitled to payment from the debtor and to enforce security for such payment. That entity is the real party in interest. It must bring the motion or, if the motion is filed by a servicer or nominee or other agent with claimed authority to bring the motion, the motion must identify and be prosecuted in the name of the real party in interest.

**Real Property Law > Financing > Mortgages & Other Security Instruments > Definitions & Interpretation**
[HN10] *Idaho Code Ann. § 45-1502(1)* defines "beneficiary" for purposes of the trust deed statute as the person named or otherwise designated in a trust deed for whose benefit a trust deed is given, or his successor in interest, and who shall not be the trustee. *Idaho Code Ann. § 45-1502(3)* defines "trust deed" as a deed executed in conformity with the trust deed statute and conveying real property to a trustee in trust to secure the performance of an obligation of the grantor or other person named in the deed to a beneficiary.

**Bankruptcy Law > Practice & Proceedings > Contested Matters**
[HN11] Disputed factual issues in contested matters in a bankruptcy case may not be resolved through testimony

in affidavits but, rather, require testimony in open court. *Fed. R. Bankr. P. 9014(d)*.

**Bankruptcy Law > Practice & Proceedings > Professional Responsibility**
[HN12] *Fed. R. Bankr. P. 9011(b)* provides, inter alia, that a motion's filing or other presentation constitutes a certification that there has been an inquiry reasonable under the circumstances, and that factual allegations made have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

**COUNSEL:** [*1] For Darrell Royce Sheridan, Debtor: Jeffrey H Andrews, Hayden, ID.

For Sherry Ann Sheridan, Joint Debtor: Jeffrey H Andrews, Hayden, ID.

**JUDGES:** TERRY L. MYERS, CHIEF U. S. BANKRUPTCY JUDGE.

**OPINION BY:** TERRY L. MYERS

**OPINION**

**MEMORANDUM OF DECISION**

**INTRODUCTION**

In this Chapter 7 case, the trustee, Ford Elsaesser ("Trustee"), objects to a motion under *§ 362(d)* for relief from the *§ 362(a)* automatic stay. [1] Motions under *§ 362(d)* are common in bankruptcy cases. [2] Most stay relief requests proceed promptly to entry of an order, after proper notice, without any objection. [3]

> 1  All chapter and section references are to the Bankruptcy Code, *11 U.S.C. §§ 101-1532*, unless otherwise indicated.
> 2  In 2008, this Court saw over 2,300 stay relief motions in the 5,224 cases filed.
> 3  *See* Local Bankruptcy *Rule 4001.2* (addressing substantive and procedural requirements for stay relief motions, and providing for entry of orders upon absence of objection after notice).

However, changes in mortgage practices over the past several years have created a number of new issues.

2009 Bankr. LEXIS 552, *1

The one highlighted in this case is the standing of the moving creditor. Serial assignments of the mortgagee's interest(s) and the securitization of mortgages have complicated [*2] what was previously a generally straight-forward standing analysis. Though many creditors provide in their motions adequate explanation and documentation of their standing to seek relief on real estate secured debts, Trustee challenges the adequacy of the subject motion in this case.

Following hearing and consideration of the arguments of the parties, the Court determines that Trustee's objection is well taken and the same will be sustained. The motion for stay relief will be denied.

## BACKGROUND AND FACTS

On June 24, 2008, Darrell and Sherry Ann Sheridan ("Debtors") filed their joint chapter 7 bankruptcy petition, schedules and statements. They scheduled a fee ownership interest in a residence located in Post Falls, Idaho. *See* Doc. No. 1 at sched. A (the "Property"). Debtors asserted the Property's value was $ 225,000.00. *Id.* They indicated secured claims existed in favor of "Litton Loan Servicing" ($ 197,000.00) and "Citimortgage" ($ 34,000.00). *Id.* at sched. D. While this left no apparent equity in the Property, Debtors nevertheless claimed the benefit of an Idaho homestead exemption. *Id.* at sched. C. [4]

> 4    There was no objection, and the exemption was therefore allowed. *Taylor v. Freeland & Kronz, 503 U.S. 638, 643-44, 112 S. Ct. 1644, 118 L. Ed. 2d 280 (1992);* [*3] *Rainsdon v. Farson (In re Farson), 387 B.R. 784, 797 (Bankr. D. Idaho 2008).* Debtors indicated in their § 521 statement of intention that they would reaffirm the secured debts on the Property.

The § 341(a) meeting of creditors occurred on July 31, 2008. Debtors received a discharge on October 3, 2008. While the case was noticed to creditors as a "no asset" chapter 7, and though Trustee concedes there will be no anticipated distribution to creditors, Trustee has not yet filed his final report of no distribution which would allow the case to close. [5]

> 5    Closing of the case as a no asset chapter 7 would constitute an abandonment of the Property as a scheduled but not administered asset, *see §* *554(c),* and the automatic stay would terminate,

> *see § 362(c)(1).*

On October 16, 2008, the subject motion for relief from stay was filed. *See* Doc. No. 21 (the "Motion"). It was filed by "Mortgage Electronic Registration Systems, Inc. as nominee HSBC Bank USA, National Association, as Indenture Trustee of the Fieldstone Mortgage Investment Trust Series 2006-3." *Id.* at 1 (the "Movant"). [6] The Movant characterized itself as a "secured creditor and Claimant." *Id.* The Motion further alleges that Debtors were [*4] indebted at filing "to Movant" and that the debt arose out of a promissory note and a deed of trust dated September 20, 2006 "naming Movant as beneficiary." *Id.*

> 6    Mortgage Electronic Registration Systems, Inc. refers to itself, and is generally referred to by others and in the case law, as "MERS."

Attached to the Motion is a promissory note (the "Note") executed by Debtors. It is payable to "Fieldstone Mortgage Company" as the "Lender." *See* Ex. 1. [7] A portion of the Note states: "I understand Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments . . . is called the Note Holder."

> 7    The documents attached to the Motion were admitted into evidence at the final hearing, by stipulation of the parties, as "Exhibit 1."

The Note is secured by a deed of trust dated September 20, 2006 and recorded in the real property records of Kootenai County, Idaho, on September 22, 2006 (the "Deed of Trust"). The Deed of Trust at paragraph (C) identifies and defines the "Lender" as "Fieldstone Mortgage Company, a Maryland corporation." Paragraph (E) of the Deed of Trust recites:

> MERS is a separate corporation that is acting solely as nominee for [*5] Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument.

Ex. 1.

Trustee objected to the Motion, contending that the Movant failed to establish its interest in the Property or its standing to seek stay relief. Doc. No. 23. At a preliminary hearing on November 4, 2008, the parties

requested a final hearing because the question of standing remained unresolved. [8] A final hearing was held on December 16, 2008, at which Trustee and counsel for Movant made argument, but no evidence was presented other than the documents that, as noted above, were admitted by agreement. [9]

> 8  [HN1] A "final hearing" is contemplated under § 362(d) and (e). That it would be an evidentiary hearing is a result of the presence of material, disputed facts, which under *Fed. R. Bankr. P. 9014(d)* requires testimony in the same manner as in an adversary proceeding.

> 9    The Code establishes time frames for preliminary hearing, final hearing and ruling. *See § 362(e)(1), (2)*. In this case, the Motion was originally filed October 16, 2008. [HN2] Under § 362(e)(2), the stay generally "shall terminate on the date that is 60 days after a request is made by a party in interest" if the case is one under [*6] chapters 7, 11 or 13 and the debtor is an individual. However, that period may be extended by either agreement of the parties or by the Court for good cause. *See § 362(e)(2)(B)*. Here, the scheduling of the hearings resulted in a final hearing on December 16, 2008, about the 60th day after the request. This delay was by or with concurrence of the parties. The Court concludes that additional delay to the date of this Decision was required to address the contentions of the parties.

## DISCUSSION AND DISPOSITION

### A. Stay relief requires a motion by a party in interest with standing

The Bankruptcy Code, Bankruptcy Rules and this District's local rules govern stay relief requests.

[HN3] Under the Code, relief from the § 362(a) stay is authorized "[o]n request of a *party in interest* and after notice and a hearing, . . . ." *See § 362(d)* (emphasis added). *See also § 362(e)(1) and (2), § 362(f), § 362(j)* (all referring to requests made by a "party in interest.") One ground for stay relief is "cause, including the lack of adequate protection of an interest in property *of such party in interest*[.]" *§ 362(d)(1)* (emphasis added). The Motion here alleged "cause" based on delinquent payments, *see* Doc. No. 1 at [*7] 2, thus implicating § 362(d)(1) even though no specific citations to § 362(d)(1)

are made. [10]

> 10  Another ground for stay relief with respect to acts against property is an absence of equity in such property coupled with a lack of necessity of such property for an effective reorganization. *See § 362(d)(2)*. The Motion indicated a lack of equity in the Property and, in light of the fact that this is a chapter 7 liquidation, the Property is not required for reorganization.

[HN4] The Rules require that a stay relief request be made by a motion. *See Fed. R. Bankr. P. 9013* ("A request for an order, except when an application is authorized by these rules, shall be by written *motion,* unless made during a hearing.") (emphasis added); *Fed. R. Bankr. P. 4001(a)(1)* ("A *motion* for relief from an automatic stay provided by the Code . . . shall be made in accordance with *Rule 9014*[.]") (emphasis added).

In addition to the Bankruptcy Rules, this District's local rules require, *inter alia,* that:

> -- the request shall be made by a "party in interest" and by "motion;"

> -- the motion shall "[p]rovide the details of the underlying obligation or liability upon which the motion is based;" and

> -- the motion shall have attached [*8] "accurate and legible copies of all documents evidencing the obligation and the basis of perfection of any lien or security interest[.]"

LBR 4001.2(a), (b)(2), and (b)(5).

### 1. Party in interest, and standing

[HN5] While the term "party in interest" is not defined by the Code, this Court has held that such a party must have a "pecuniary interest" in the outcome of the dispute before the Court. *See In re Simplot, 2007 Bankr. LEXIS 2936, 2007 WL 2479664 at *9 n.45 (Bankr. D. Idaho Aug. 28, 2007)* (citing *In re Elias, 05.2 I.B.C.R. 41, 42, 2005 Bankr. LEXIS 3181, 2005 WL 4705220 (Bankr. D. Idaho 2005)*, and *In re Stone, 03.2 I.B.C.R. 134, 135, 2003 Bankr. LEXIS 2232 (Bankr. D. Idaho 2003)*). *See also Brown v. Sobczak (In re Sobczak), 369 B.R. 512,*

517-18 (9th Cir. BAP 2007) (noting that a "party in interest" may be one who has an actual pecuniary interest in the case, one who has a practical stake in the outcome of the case, or one who will be impacted in any significant way in the case).

*Simplot* not only defined party in interest, it addressed "standing" issues. The question there was whether the J. R. Simplot Company, which was not a creditor with a claim against the debtor or estate, "had sufficient party in interest standing to be heard[.]" *2007 Bankr. LEXIS 2936, 2007 WL 2479664 at *9.* This [*9] Court stated:

> *Hasso v. Mozsgai (In re La Sierra Fin. Servs.), 290 B.R. 718 (9th Cir. BAP 2002),* explained that [HN6] the doctrine of standing encompasses both constitutional limitations on federal court jurisdiction (*i.e.,* the case or controversy requirements of Article III), and prudential limitations on the court's exercise of that jurisdiction. Constitutional standing requires an injury in fact, *viz.* an invasion of a judicially cognizable interest. *290 B.R. at 726-27.* Prudential standing requires that the party's assertions fall within the zone of interests protected by the statute and, further, requires that the litigant assert only its own rights and not those of another party. *Id. at 727* (citing *Bennett v. Spear, 520 U.S. 154, 162, 167-68, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997).* The party asserting standing exists has the burden of proving it. *Id. at 726.* Though sometimes articulated in the cases as principles applicable to standing on appeal, the same propositions apply to a party at the bankruptcy court level.

*Id.* (footnote citations omitted). In *Simplot,* the Court concluded that "parties may not assert . . . objections that relate solely to others, or that go to issues that do not directly and adversely affect them [*10] pecuniarily." *2007 Bankr. LEXIS 2936, [WL] at *10* (footnote citations omitted). These same standing requirements were recently highlighted in a stay relief context by the court in *In re Jacobson, 402 B.R. 359, 2009 WL 567188 at *5-6 (Bankr. W.D. Wash. 2009).*

## 2. Real party in interest

[HN7] Under *Rule 9014,* which by virtue of *Rule 4001(a)(1)* governs stay relief requests, certain "Part VII" rules are applicable. *See Rule 9014(c).* Among those incorporated rules is *Rule 7017,* which in turn incorporates *Fed. R. Civ. P. 17,* and *Rule 17(a)(1)* provides that "An action must be prosecuted in the name of the real party in interest."

*Jacobson* notes that its moving party, who claimed to be a servicer for the holder of the note, "neither asserts beneficial interest in the note, nor that it could enforce the note in its own right." *402 B.R. 359, 2009 WL 567188 at *4.* It concluded that *Fed. R. Civ. P. 17* applied, requiring the stay relief motion to be brought in the name of the real party in interest. *Id.* (citing *In re Hwang, 396 B.R. 757, 767 (Bankr. C.D. Cal. 2008));* see also *In re Vargas, 396 B.R. 511, 521 (Bankr. C.D. Cal. 2008).* As *Jacobson* summarized:

> [HN8] The real party in interest in relief from stay is whoever is entitled to enforce [*11] the obligation sought to be enforced. Even if a servicer or agent has authority to bring the motion on behalf of the holder, it is the holder, rather than the servicer, which must be the moving party, and so identified in the papers and in the electronic docketing done by the moving party's counsel.

*Id.*

The upshot of these several provisions of the Code, Rules, local rules and case law is this: [HN9] to obtain stay relief, a motion must be brought by a party in interest, with standing. This means the motion must be brought by one who has a pecuniary interest in the case and, in connection with secured debts, by the entity that is entitled to payment from the debtor and to enforce security for such payment. That entity is the real party in interest. It must bring the motion or, if the motion is filed by a servicer or nominee or other agent with claimed authority to bring the motion, the motion must identify and be prosecuted in the name of the real party in interest. [11]

> [11] The Ninth Circuit's recent decision in *Reusser v. Wachovia Bank, 525 F.3d 855 (9th Cir. 2008)* does not require a different conclusion. *Reusser*

held that a lender, Wachovia Bank, did not violate the automatic stay by seeking [*12] to foreclose on the debtors' property after the bankruptcy court granted the loan servicer's (Washington Mutual) § 362(d) motion. *Id. at 861-62.* Although Wachovia did not join in the motion or separately seek stay relief, the court held that the order entered "as to Washington Mutual" was effective as to Wachovia. *Id. at 857, 861.* Notably, however, the Reussers never challenged Washington Mutual's standing in bankruptcy court; instead, they launched that attack in a subsequently filed district court action. *Id. at 861-62.* The Ninth Circuit held that "a final order lifting an automatic stay as to the property or interest in question--the res--and its scope is not limited to the particular parties before the court." *Id. at 861.* The difference here is that Trustee has timely objected to Movant's standing and, of course, no final order has been entered.

**B. The present Motion**

Under the documents attached to the Motion and later admitted at hearing as Ex. 1, Fieldstone Mortgage Company, a Maryland corporation, would certainly appear to be a party in interest and have standing. It has an economic interest according to the Note attached to the Motion and an interest in Debtors' Property [*13] according to the Deed of Trust that is also attached.

However, the Motion was not brought by Fieldstone Mortgage Company.

**1. MERS as "nominee" or "beneficiary"**

Counsel for Movant argues that MERS, given its titular designation of "beneficiary" under the Deed of Trust, is or should be able to prosecute the Motion under the Code, Rules and Local Rules. Counsel conceded, however, that MERS is not an economic "beneficiary" under the Deed of Trust. It is owed and will collect no money from Debtors under the Note, nor will it realize the value of the Property through foreclosure of the Deed of Trust in the event the Note is not paid. [12]

> 12  [HN10] *Idaho Code § 45-1502(1)* defines beneficiary for purposes of the trust deed statute as "the person named or otherwise designated in a trust deed as *the person for whose benefit* a trust deed is given, or his successor in interest, and

who shall not be the trustee." *Idaho Code § 45-1502(3)* defines trust deed as "a deed executed in conformity with this act and conveying real property to a trustee in trust *to secure the performance of an obligation* of the grantor or other person named in the deed *to a beneficiary." Id.* (emphasis added).

Further, the Deed of Trust's [*14] designation of MERS as "beneficiary" is coupled with an explanation that "MERS is . . . acting *solely* as nominee for Lender and Lender's successors and assigns." Ex. 1 (emphasis added). Movant's briefing suggests that a "nominee" is synonymous with an "agent." *See* Doc. No. 26 at 2.

The Motion was filed by MERS "as nominee [for] HSBC Bank USA, National Association, as Indenture Trustee of the Fieldstone Mortgage Investment Trust Series 2006-3." Even assuming that MERS as a "nominee" had sufficient rights and ability as an agent to advance its principal's stay relief request, there remains an insuperable problem. The Motion provides no explanation, much less documentation or other evidence, to show that the Fieldstone Mortgage Investment Trust Series 2006-3 (as an entity) or HSBC Bank USA (as that entity's "indenture trustee") has any interest in the subject Note or the subject Deed of Trust. [13]

> 13  The Motion uses several terms (Movant, Claimant, Petitioner) without definition or evident consistency. The Motion commenced as follows:
>
> > "COMES NOW Mortgage Electronic Registration Systems, Inc. as nominee HSBC Bank USA, National Association, as Indenture Trustee of the Fieldstone Mortgage Investment [*15] Trust Series 2006-3, a secured creditor and Claimant herein, and moves the Court for its Order granting relief from the automatic stay[.]"
>
> Thus, the "Claimant" and evidently the "Movant" (*i.e.,* the party who "COMES NOW . . . and moves") are one and the same, and this entity also purports to be a "secured creditor." Since MERS is acting as nominee, the Claimant/Movant and secured creditor appears by these allegations to be HSBC Bank USA (in its role as indenture trustee

for others). The Motion continues by asserting that "Debtor was on the date of filing the petition herein, *indebted to Claimant* arising out of [the Note] and a Deed of Trust dated September 20, 2006, *naming Movant as beneficiary.*" Contrary to these assertions, the Deed of Trust does not name HSBC Bank USA or the Fieldstone Mortgage Investment Trust as its beneficiary. Nor is there explanation of how Debtors came to owe HSBC Bank USA.

In light of Trustee's objection on this score, Movant argues that MERS' role as "nominee for Lender [*i.e.,* Fieldstone Mortgage Company] and Lender's successors and assigns" gives it ample authority to assert the stay relief request under the Deed of Trust for whatever successor in interest [*16] or assignee might have the beneficial interest. [14] Even if the proposition is accepted that the Deed of Trust provisions give MERS the ability to act as an agent ("nominee") for another, it acts not on its own account. Its capacity is representative.

14  This language appears in the Deed of Trust only. There is no mention of MERS in the Note.

**2. Documentation**

This District's Local Bankruptcy *Rule 4001.2* requires copies of "all documents evidencing the obligation and the basis of perfection of any lien or security interest." The sole documentation provided with the Motion here evidences the interests in the Note and Deed of Trust held by Fieldstone Mortgage Company, a Maryland corporation. This submission does not answer the key question -- Who was the holder of the Note was at the time of the Motion?

Several movants for stay relief have argued that the holder of a note secured by a deed of trust obtains the benefit of the deed of trust even in the absence of an assignment of the deed of trust, on the theory that the security for the debt follows the debt. Under this theory, it would appear that when bankruptcy intervenes, and somewhat like a game of Musical Chairs, the then-current holder [*17] of the note is the only creditor with a pecuniary interest and standing sufficient to pursue payment and relief from stay. [15]

15  Some courts have indicated that the stay relief request should explain the serial assignments resulting in the movant becoming the holder of

the note. *See, e.g., In re Hayes, 393 B.R. 259, 269 (Bankr. D. Mass. 2008)* ("The Court and the Debtor are entitled to insist that the moving party establish its standing in a motion for relief from stay through the submission of an accurate history of the chain of ownership of the mortgage."); *In re Maisel, 378 B.R. 19, 22 (Bankr. D. Mass. 2007)* ("'If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant.'") (quoting *In re Parrish, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005)).* The court in *Jacobson* decided that it "need not here go so far" as to require such tracing, because of the paucity of proof presented in that case. *402 B.R. 359, 2009 WL 567188 at *6.* The same is true here. Movant's proof does not even show who presently holds the Note. That [*18] alone provides sufficient basis to deny the Motion.

The Motion here certainly suggests that the Fieldstone Mortgage Investment Trust Series 2006-3 (or perhaps HSBC Bank USA in its capacity as indenture trustee for that trust) was the holder of the note on the June 24, 2008, petition date. But at the time of the final *§ 362(e)* evidentiary hearing herein, the parties discussed and Movant ultimately conceded that (I) the Note contained nothing indicating its transfer by Fieldstone Mortgage Company, (ii) the Motion was devoid of allegations regarding the details of any such transfer, and (iii) the record lacked any other documents related to the issue.

**3. The supplemental affidavit**

Subsequent to the closing of the hearing and after the Court took the dispute under advisement, Movant filed a "supplemental affidavit" of its counsel. *See* Doc. No. 28 (filed January 2, 2009). This affidavit alleges that Movant's counsel obtained on such date the "original" Note and that the same contains an indorsement. Counsel states that his "affidavit is presented to supplement the record herein and for the Court's consideration in the pending motion[.]" *Id.* at 2.

The filing and consideration of this supplemental [*19] affidavit are improper for several reasons.

First, the record was closed, and the Court did not

authorize the reopening of that record, nor did it indicate any post-hearing submissions would be accepted.

Second, Trustee did not have the opportunity to address this "newly obtained" document at hearing, and nothing shows his consent to the *post hoc* supplementation of the evidentiary record.

Third, [HN11] disputed factual issues in contested matters may not be resolved through testimony in "affidavits" but rather require testimony in open court. *See Fed. R. Bankr. P. 9014(d).* Under the circumstances, the identity of the holder of the Note certainly appears to be a fact in dispute falling within the ambit of this rule.

Fourth, the affidavit is insufficient to establish that counsel, as affiant, has the ability to testify regarding or lay the foundation required to admit the document. *See Esposito v. Noyes (In re Lake Country Invs., LLC),* 255 B.R. 588, 594-95 (Bankr. D. Idaho 2000). [16] The assertion that the newly possessed note is the "original" appears to be based not on the affiant's (counsel's) personal knowledge but on the assertions of someone else.

> 16    *Accord Jacobson, 402 B.R. 359, 2009 WL 567188 at *6-8* (discussing [*20] inadequacies of evidentiary submissions).

Fifth, the proffer of this "new" note as the "original" note directly contradicts Movant's prior representations that the Note attached to the Motion was "true and correct" and the operative document in this matter. *See* Doc. No. 21 at 1.

Sixth, even were it considered, the "new" Note's asserted indorsement states: "Pay To The Order Of [*blank*] Without Recourse" and then purports to be signed by Fieldstone Mortgage Company through a named assistant vice president. There is no date nor indication of who was or is the transferee. Fieldstone Mortgage Company may have indorsed the Note in blank, but this document does not alone establish that either HSBC Bank USA or Fieldstone Mortgage Investment Trust is the Note's holder. [17]

> 17    *See generally Idaho Code § 28-3-205(2)* ("When indorsed in blank, an instrument is payable to the bearer and may be negotiated by transfer of possession alone until specially indorsed."); *§ 28-3-301* (providing that the holder

of the instrument may enforce it). These provisions make identification of the current holder significant.

Thus, even if a "nominee" such as MERS could properly bring a motion for stay relief in the name [*21] of and on behalf of the real party in interest -- the entity that has rights in and pecuniary interest under the Note secured by the Deed of Trust -- nothing of record adequately establishes who that entity actually is. Under the evidence submitted at the *§ 362(e)* final hearing, which consists solely of Exhibit 1, the only entity that MERS could conceivably represent as an agent/nominee would be Fieldstone Mortgage Company. But MERS does not represent that party according to the Motion and, in fact, its contentions are to the effect that Fieldstone Mortgage Company is no longer a party in interest. [18]

> 18    For this reason, Movant's reliance on *In re Huggins, 357 B.R. 180 (Bankr. D. Mass. 2006)* is misplaced. *Huggins* held that MERS, which was named in a mortgage as the lender's nominee, had standing to seek stay relief. *Id. at 184-85.* But in *Huggins,* the original lender continued to hold the note, and the mortgage had not been transferred. *Id. at 182, 184.*

At the time of that final hearing, counsel for Movant conceded that he had no documentation provided to him by his "client" which indicated the interests under the Note or Deed of Trust were held by either HSBC Bank USA or the Fieldstone [*22] Mortgage Investment Trust. Counsel filed the Motion and characterized the Movant's identity therein based solely on undocumented representations made to him. This would appear to be a problematic approach generally. [19] And, in this particular case, Trustee's objection to the Motion put the matter at issue and Movant to its proof.

> 19    *See* [HN12] *Fed. R. Bankr. P. 9011(b)* (providing *inter alia* that a motion's filing or other presentation constitutes a certification that there has been an "inquiry reasonable under the circumstances" and that factual allegations made "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"). Trustee here was clear, though, that he asserted no *Rule 9011* claims against Movant or its counsel.

2009 Bankr. LEXIS 552, *22

## CONCLUSION

When Trustee challenged the Motion's bare assertions, Movant failed to provide an adequate record showing it was a party in interest with standing entitled to seek such relief. On the record presented, the Court finds and concludes Trustee's objection is well taken. That objection will be sustained. The Motion will be denied. The Trustee will provide a form [*23] of order for the Court's review and entry.

DATED: March 12, 2009

/s/ Terry L. Myers

TERRY L. MYERS

CHIEF U. S. BANKRUPTCY JUDGE



RESIDENTIAL FUNDING CO, LLC, f/k/a RESIDENTIAL FUNDING
CORPORATION, Plaintiff-Appellee, v GERALD SAURMAN,
Defendant-Appellant. BANK OF NEW YORK TRUST COMPANY,
Plaintiff-Appellee, v COREY MESSNER, Defendant-Appellant.

No. 290248, No. 291443

COURT OF APPEALS OF MICHIGAN

*2011 Mich. App. LEXIS 719*

**April 21, 2011, Decided**

**NOTICE:**

THIS OPINION IS UNCORRECTED AND
SUBJECT TO REVISION BEFORE PUBLICATION IN
THE MICHIGAN COURT OF APPEALS REPORTS.

**PRIOR HISTORY:** [*1]
Kent Circuit Court. LC No. 08-011138-AV. Jackson
Circuit Court. LC No. 08-003406-AV.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The Kent Circuit Court,
Michigan, and other trial courts, denied defendant
homeowners' assertions that the mortgagee lacked
authority to foreclose by statute, *MCL 600.3204(1)(d)*,
and their conclusions were affirmed. In a consolidated
case, defendants appealed.

**OVERVIEW:** The appellate court noted that the issue
was whether the mortgagee could exercise its contractual
right to foreclose by means of advertisement. The
appellate court found that the mortgagee did not have the
authority to foreclose by advertisement on the
homeowners' properties. It was the plaintiff lenders that
lent the homeowners money pursuant to the terms of the
notes. The mortgagee only held an interest in the property
as security for the note. The only interest the mortgagee
possessed was in the properties through the mortgages.

The mortgagee was wholly without legal or rightful title
to the debt and there were no circumstances under which
it was entitled to receive any payments on the notes.
Nothing in the contract permitted the mortgagee to take
any action with respect to the debt, or provided it any
interest therein. The Legislature specifically required
ownership of an interest in the note before permitting
foreclosure by advertisement. Under *MCL 600.3105(2)*,
the Legislature limited foreclosure by advertisement to
those parties that were entitled to enforce the debt
instrument, resulting in an automatic credit toward
payment on the instrument on the event of foreclosure.

**OUTCOME:** The judgments were reversed, the
foreclosure proceedings vacated, and remanded for
further proceedings.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Appellate
Review > Standards of Review*
*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Appeals > Standards of Review > De
Novo Review*
[HN1] The appellate court reviews de novo decisions
made on motions for summary disposition, as well as a
circuit court's affirmance of a district court's decision on a

2011 Mich. App. LEXIS 719, *1

motion for summary disposition. The appellate court reviews all affidavits, pleadings, depositions, admissions and other evidence submitted by the parties in the light most favorable to the party opposing the motion.

*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Governments > Legislation > Interpretation*
[HN2] The appellate court reviews de novo questions of statutory interpretation and application. The primary goal of statutory interpretation is to give effect to the intent of the Legislature. This determination is accomplished by examining the plain language of the statute. Although a statute may contain separate provisions, it should be read as a consistent whole, if possible, with effect given to each provision. If the statutory language is unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed and further judicial construction is neither permitted nor required. Statutory language should be reasonably construed, keeping in mind the purpose of the statute. If reasonable minds could differ regarding the meaning of a statute, judicial construction is appropriate. When construing a statute, a court must look at the object of the statute in light of the harm it is designed to remedy and apply a reasonable construction that will best accomplish the purpose of the Legislature.

*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > General Overview*
[HN3] Foreclosure by advertisement is governed by *MCL 600.3204(1)(d)*, which provides, in part: A party may foreclose a mortgage by advertisement if all of the following circumstances exist: (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

*Real Property Law > Financing > Mortgages & Other Security Instruments > Definitions & Interpretation*
*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > General Overview*
[HN4] The indebtedness, i.e., the note, and the mortgage are two different legal transactions providing two different sets of rights, even though they are typically employed together. A "mortgage" is a conveyance of title

to property that is given as security for the payment of a debt or the performance of a duty and that will become void upon payment or performance according to the stipulated terms. The mortgagee has an interest in the property. The mortgagor covenants, pursuant to the mortgage, that if the money borrowed under the note is not repaid, the mortgagee will retain an interest in the property. Thus, unlike a note, which evidences a debt and represents the obligation to repay, a mortgage represents an interest in real property contingent on the failure of the borrower to repay the lender. The indebtedness, i.e., the note, and the mortgage are two different things.

*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > General Overview*
[HN5] Where the Legislature has limited the availability to take action to a specified group of individuals, parties cannot grant an entity that falls outside that group the authority to take such actions. The Legislature specifically requires ownership of an interest in the note before permitting foreclosure by advertisement.

*Governments > Legislation > Interpretation*
*Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > General Overview*
[HN6] *MCL 600.3204(1)(d)* explicitly requires that, in order to foreclose by advertisement, the foreclosing party must possess an interest in the indebtedness. It simply does not permit foreclosure in the name of an agent or a nominee. If the Legislature intended to permit such actions, it could have easily included "agents or nominees of the noteholder" as parties that could foreclose by advertisement. Indeed, had the Legislature intended the result suggested by plaintiffs, it would have merely had to delete the word "servicing." The law is clear that the Michigan Supreme Court must avoid construction that would render any part of the statute surplusage or nugatory. Thus, the Legislature's choice to permit only servicing agents and not all agents to foreclose by advertisement must be given effect.

*Governments > Legislation > Interpretation*
[HN7] Courts may not rewrite the plain statutory language and substitute its own policy decisions for those already made by the Legislature.

**Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > General Overview**

[HN8] Under *MCL 440.3602*, an instrument is only discharged when payment is made "to a person entitled to enforce the instrument." Those parties listed in *MCL 600.3204(1)(d)*-the servicer, the owner of the debt, or someone owning an interest in the debt-would all be persons entitled to enforce the instrument that reflects the indebtedness.

**Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > Judicial Foreclosures**

[HN9] See *MCL 600.3105(2)*.

**Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > Judicial Foreclosures**

[HN10] Once a judicial foreclosure proceeding on the mortgage has begun, a subsequent action on the note is prohibited, absent court authorization, thereby protecting the mortgagor from double recovery.

**Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures > General Overview**

[HN11] The Legislature limited foreclosure by advertisement to those parties that were entitled to enforce the debt instrument, resulting in an automatic credit toward payment on the instrument in the event of foreclosure.

**JUDGES:** Before: WILDER, P.J., and SERVITTO and SHAPIRO, JJ. WILDER, J. (dissenting).

**OPINION BY:** Douglas B. Shapiro

**OPINION**

SHAPIRO, J.

These consolidated cases each involve a foreclosure instituted by Mortgage Electronic Registration System (MERS), the mortgagee in both cases. The sole question presented is whether MERS is an entity that qualifies under *MCL 600.3204(1)(d)* to foreclose by advertisement on the subject properties, or if it must instead seek to foreclose by judicial process. We hold that MERS does

not meet the requirements of *MCL 600.3204(1)(d)* and, therefore, may not foreclose by advertisement.

I. BASIC FACTS AND PROCEDURAL HISTORY

In these cases, each defendant purchased property and obtained financing for their respective properties from a financial institution. The financing transactions involved loan documentation ("the note") and a mortgage security instrument (the "mortgage instrument"). The original lender in both cases was Homecoming Financial, LLC.

Each note provided for the amount of the loan, the interest rate, methods and requirements of repayment, the identity of the lender and borrower and the like. The [*2] mortgage instrument provided for rights of foreclosure of the property by the mortgagee in the event of default on the loan. The lender, though named as the lender in the mortgage security instrument, was not designated therein as the mortgagee. Instead, the mortgage stated that the Mortgage Electronic Registration Systems, Inc ("MERS") "is the mortgagee under this Security Instrument" and it contained several provisions addressing the relationship between MERS and the lender including:

> "MERS" is Mortgage Electronic Registration Systems Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.
>
> * * *
>
> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with the power of sale, the following described [*3] property . . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this

Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Defendants defaulted on their respective notes. Thereafter, MERS began non-judicial foreclosures by advertisement as permitted under *MCL 600.3201, et seq.*, purchased the property at the subsequent sheriff's sales and then quit-claimed the property to plaintiffs as respective successor lenders. When plaintiffs subsequently began eviction actions, defendants challenged the respective foreclosures as invalid, asserting, inter alia, that MERS did not have authority under *MCL 600.3204(1)(d)* to foreclose by advertisement because it did not fall within any of the three categories of mortgagees permitted to do so under that statute. The district courts denied defendants' assertions [*4] that MERS lacked authority to foreclose by statute and their conclusions were affirmed by the respective circuit courts on appeal. We granted leave to appeal in both cases. [1]

> 1   *Residential Funding Co, LLC v Saurman*, unpublished order of the Court of Appeals, entered May 15, 2009 (Docket No. 290248); *Bank of New York Trust Co v Messner*, unpublished order of the Court of Appeals, entered July 29, 2009 (Docket No. 291443).

## II. ANALYSIS

### A. STANDARD OF REVIEW

[HN1] We review de novo decisions made on motions for summary disposition, [2] *Coblentz v Novi, 475 Mich 558, 567; 719 NW2d 73 (2006)*, as well as a circuit court's affirmance of a district court's decision on a motion for summary disposition. *First of America Bank v Thompson, 217 Mich App 581, 583; 552 NW2d 516 (1996)*. We review all affidavits, pleadings, depositions, admissions and other evidence submitted by the parties in the light most favorable to the party opposing the motion, in this case, defendants. *Coblentz, 475 Mich at 567-568*.

> 2   In Docket No. 290248, the district court granted summary disposition under *MCR 2.116(C)(10)*. In Docket No. 291443, the district court granted summary disposition under *MCR 2.116(I)(2)* ("If it appears to the court [*5] that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party.").

[HN2] We also review de novo questions of statutory interpretation and application. *Id. at 567*.

> The primary goal of statutory interpretation is to give effect to the intent of the Legislature. This determination is accomplished by examining the plain language of the statute. Although a statute may contain separate provisions, it should be read as a consistent whole, if possible, with effect given to each provision. If the statutory language is unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed and further judicial construction is neither permitted nor required. Statutory language should be reasonably construed, keeping in mind the purpose of the statute. If reasonable minds could differ regarding the meaning of a statute, judicial construction is appropriate. When construing a statute, a court must look at the object of the statute in light of the harm it is designed to remedy and apply a reasonable construction that will best accomplish the purpose of the Legislature. [*ISB Sales Co v Dave's Cakes, 258 Mich App 520, 526-527; 672 NW2d 181 (2003)* [*6] (citations omitted).]

### B. MERS BACKGROUND

The parties, in their briefs and at oral argument, explained that MERS was developed as a mechanism to provide for the faster and lower cost buying and selling of mortgage debt. Apparently, over the last two decades, the buying and selling of loans backed by mortgages after their initial issuance had accelerated to the point that

those operating in that market concluded that the statutory requirement that mortgage transfers be recorded was interfering with their ability to conduct sales as rapidly as the market demanded. By operating through MERS, these financial entities could buy and sell loans without having to record a mortgage transfer for each transaction because the named mortgagee would never change; it would always be MERS even though the loans were changing hands. MERS would purportedly track the mortgage sales internally so as to know for which entity it was holding the mortgage at any given time and, if foreclosure was necessary, after foreclosing on the property, would quit claim the property to whatever lender owned the loan at the time of foreclosure.

As described by the Court of Appeals of New York, in *MERSCORP, Inc v Romaine, 8 NY3d 90, 96; 861 NE2d 81; 828 N.Y.S.2d 266(2006)*:

> In [*7] 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages. Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.

> The initial MERS mortgage is recorded in the County Clerk's office with "Mortgage Electronic Registration Systems, Inc." named as the lender's nominee or mortgagee of record on the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system. In the MERS system, the mortgagor is notified of transfers of servicing rights pursuant to the Truth in Lending Act, but not necessarily of assignments of the beneficial interest in

the mortgage. [Footnotes omitted.]

The sole issue in this case is whether MERS, as mortgagee, [*8] but not noteholder, could exercise its contractual right to foreclose by means of advertisement.

## C. *MCL 600.3204(1)(d)*

[HN3] Foreclosure by advertisement is governed by *MCL 600.3204(1)(d)*, which provides, in pertinent part:

> [A] party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> * * *
>
> (d)    The    party    foreclosing    the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

The parties agree that MERS is neither the owner of the indebtedness, nor the servicing agent of the mortgage. Therefore, MERS lacked the authority to foreclose by advertisement on defendants' properties unless it was "the owner . . . of an interest in the indebtedness secured by the mortgage." *MCL 600.3204(1)(d)*.

The question, then, is what being the "owner . . . of an interest in the indebtedness secured by the mortgage" requires. According to Black's Law Dictionary, to "own" means "[t]o have good legal title; to hold as property; to have a legal or rightful title to." Black's Law Dictionary (6th ed). That text defines an "interest" as "the most general term that can be employed to denote a right, [*9] claim, title or legal share in something". "Indebtedness" is defined as "[t]he state of being in debt . . . the owing of a sum of money upon a certain and express agreement."

In these cases, a promissory note was exchanged for loans of $229,950 and $207,575, respectively. Thus, reasonably construing the statute according to its common legal meaning, *ISB Sales Co, 258 Mich App at 526-527*, the defendants' indebtedness is solely based upon the notes because defendants owed monies pursuant to the terms of the notes. Consequently, in order for a party to own an interest in the indebtedness, it must have a legal share, title, or right in the note.

Plaintiffs' suggestion that an "interest in the mortgage" is sufficient under *MCL 600.3204(1)(d)* is without merit. This is necessarily so, as [HN4] the indebtedness, i.e., the note, and the mortgage are two different legal transactions providing two different sets of rights, even though they are typically employed together. A "mortgage" is "[a] conveyance of title to property that is given as security for the payment of a debt or the performance of a duty and that will become void upon payment or performance according to the stipulated terms." The mortgagee [*10] has an interest in the *property*. See *Citizens Mtg Corp v Mich Basic Prop Ins Assoc, 111 Mich App 393, 397; 314 NW2d 635 (1981)* (referencing the "mortgagee's interests in the property"). The mortgagor covenants, pursuant to the mortgage, that if the money borrowed under the note is not repaid, the mortgagee will retain an interest in the *property*. Thus, unlike a note, which evidences a debt and represents the obligation to repay, a mortgage represents an interest in real property contingent on the failure of the borrower to repay the indebtedness, i.e., the note, and the mortgage are two different things.

Applying these considerations to the present case, it becomes obvious that MERS did not have the authority to foreclose by advertisement on defendants' properties. Pursuant to the mortgages, defendants were the mortgagors and MERS was the mortgagee. However, it was the plaintiff lenders that lent defendants money pursuant to the terms of the notes. MERS, as mortgagee, only held an interest in the *property* as security for the note, not an interest in the note itself. MERS could not attempt to enforce the notes nor could it obtain any payment on the loans on its own behalf [*11] or on behalf of the lender. Moreover, the mortgage specifically clarified that, although MERS was the mortgagee, MERS held "only legal title to the interest granted" by defendants in the *mortgage*. [3] Consequently, the interest in the mortgage represented, at most, an interest in defendants' properties. MERS was not referred to in any way in the notes and only Homecomings held the notes. The record evidence establishes that MERS owned neither the notes, nor an interest, legal share, or right in the notes. The only interest MERS possessed was in the properties through the mortgages. Given that the notes and mortgages are separate documents, evidencing separate obligations and interests, MERS' interest in the mortgage did not give it an interest in the debt.

3  We note that, in these cases, MERS disclaims

any interest in the properties other than the legal right to foreclose and immediately quitclaim the properties to the true owner, i.e., the lender.

Moreover, plaintiffs' analysis ignores the fact that the statute does not merely require an "interest" in the debt, but rather that the foreclosing party *own* that interest. As noted above, to own means "to have good legal title; to hold as property; [*12] to have a legal or rightful title to." None of these terms describes MERS' relationship to the note. Plaintiffs' claim that MERS was a contractual owner of an interest in the notes based on the agreement between MERS and the lenders misstates the interests created by that agreement. Although MERS stood to benefit if the debt was not paid--it stood to become the owner of the property-it received no benefit if the debt was paid. MERS had no right to possess the debt, or the money paid on it. Likewise, it had no right to use or convey the note. Its only "right to possess" was to possess the property if and when foreclosure occurred. Had the lender decided to forgive the debt in the note, MERS would have had no recourse; it could not have sued the lender for some financial loss. Accordingly, it owned no financial interest in the notes. Indeed, it is uncontested that MERS is wholly without legal or rightful title to the debt and that there are no circumstances under which it is entitled to receive any payments on the notes.

The dissent relies on the language in the mortgage instrument to suggest a contractual basis to find that MERS has an ownership interest in the loan. However, the fact [*13] that Homecomings gave MERS authority to take "any action required of the Lender" did not transform MERS into an owner of an interest in the notes. Trustees have the authority to take action on behalf of a trust; they can even be authorized to take "any" action. Nevertheless, such authority does not give them an ownership interest in the trust. Moreover, the provision on which the dissent relies (but does not fully quote) contains language limiting MERS to taking action on behalf of the lender's equitable interest in the mortgage instrument. [4] The relevant language provides that the borrower "understands and agrees that MERS holds only legal title *to the interests granted by Borrower in this Security Instrument*" (emphasis added) and gives MERS "the right: to exercise any or all *of those interests* . . . and to take any action required of the Lender including, but not limited to, releasing and canceling this Security Instrument . . . ." (emphasis added). Thus, the contract language expressly limits the interests MERS owns to

those granted in the mortgage instrument and limits MERS' right to take action to those actions related to the mortgage instrument. Nothing in this language permits [*14] MERS to take any action with respect to the debt, or provides it any interest therein.

> 4  Though the lenders do not hold legal title to the mortgage instrument, they do have an equitable interest therein. See *Aiton v. Slater, 298 Mich. 469, 480; 299 N.W. 149 (1941); Atwood v Schlee, 269 Mich 322; 257 NW 712 (1934)*. The lender's equitable interest in the mortgage does not, however, translate into an equitable interest for MERS in the loan.

Finally, even assuming that the contract language did create such a right, Homecomings cannot grant MERS the authority to take action where the statute prohibits it. Regardless of whether Homecomings would like MERS to be able to take such action, it can only grant MERS the authority to take actions that our Legislature has statutorily permitted. [HN5] Where the Legislature has limited the availability to take action to a specified group of individuals, parties cannot grant an entity that falls outside that group the authority to take such actions. Here, the Legislature specifically requires ownership of an interest in the note before permitting foreclosure by advertisement.

The contention that the contract between MERS and Homecomings provided MERS with an ownership [*15] interest in the note stretches the concept of legal ownership past the breaking point. While the term may be used very loosely in some popular contexts, such as the expression to "own a feeling," such use refers to some subjective quality or experience. We are confident that such a loose and uncertain meaning is not what the Legislature intended. Rather, the Legislature used the word "owner" because it meant to invoke a legal or equitable right of ownership. Viewed in that context, although MERS owns the mortgage, it owns neither the debt nor an interest in any portion of the debt, and is not a secondary beneficiary of the payment of the debt. 5

> 5  The dissent's analogy between MERS' ability to "own an interest" in the note and an easement-holder's ownership of an interest in land without owning the land is unavailing. An easement holder owns rights to the land that even the landholder cannot infringe upon or divest him of, see *Dobie v Morrison, 227 Mich App 536,*

*541; 575 NW2d 817 (1998)* (noting that a fee owner cannot use the burdened land in any manner that would interfere with the easement holders' rights), while the interest the dissent contends MERS "owns" would be equal to or less [*16] than that of the noteholder and the noteholder could completely divest MERS of the alleged interest by forgiving the note without MERS having any recourse. Accordingly, the analogy fails.

The dissent's conclusion, that MERS owns an interest in the note because whether it ultimately receives the property depends on whether the note is paid, similarly distorts the term "interest" from a legal term of art to a generalized popular understanding of the word. It may be that MERS is concerned with (i.e., interested in) whether the loans are paid because that will define its actions vis-a-vis the properties, but being concerned about whether someone pays his loan is not the same as having a legal right, or even a contingent legal right, to those payments.

Plaintiffs are mistaken in their suggestion that our conclusion that MERS does not have "an interest in the indebtedness" renders that category in the statute nugatory. We need not determine the precise scope of that category, but, by way of example, any party to whom the note has been pledged as security by the lender has "an interest in the indebtedness" because, under appropriate circumstances, it owns the right to the repayment of that [*17] loan.

Plaintiffs also argue that MERS had the authority to foreclose by advertisement as the agent or nominee for Homecomings, who held the note and an equitable interest in the mortgage. However, this argument must also fail under the statute because [HN6] the statute explicitly requires that, in order to foreclose by advertisement, the foreclosing party must possess an interest in the indebtedness. *MCL 600.3204(1)(d)*. It simply does not permit foreclosure in the name of an agent or a nominee. If the Legislature intended to permit such actions, it could have easily included "agents or nominees of the noteholder" as parties that could foreclose by advertisement. Indeed, had the Legislature intended the result suggested by plaintiffs, it would have merely had to delete the word "servicing." The law is clear that this Court must "avoid construction that would render any part of the statute surplusage or nugatory."

2011 Mich. App. LEXIS 719, *17

*Wickens v Oakwood Healthcare Sys, 465 Mich 53, 60; 631 NW2d 686 (2001).* Thus, the Legislature's choice to permit only servicing agents and not all agents to foreclose by advertisement must be given effect.

Similarly, we reject plaintiffs' reliance on *Jackson v Mortgage Electronic Registration Sys, Inc, 770 NW2d 487 (Minn, 2009).* [*18] *Jackson,* a Minnesota case, is inapplicable because it interprets a statute that is substantially different from *MCL 600.3204.* The statute at issue in *Jackson* specifically permits foreclosure by advertisement if "a mortgage is granted to a mortgagee as nominee or agent for a third party identified in the mortgage, and the third party's successors and assigns." *Id. at 491.* Thus, the Minnesota statute specifically provides for foreclosure by advertisement by entities that stand in the exact position that MERS does here. Indeed, the Minnesota statute is "frequently called 'the MERS statute.'" *Id. at 491.* Our statute, *MCL 600.3204(1)(d)* makes no references to nominees or agents. Rather, it requires that the party foreclosing be either the mortgage servicer or have an ownership interest in the indebtedness. The *Jackson* statute also revolves around the mortgage, unlike *MCL 600.3204(1)(d),* which uses the term indebtedness, which, as discussed previously, is a reference to the note, not the mortgage. Thus, *Jackson* has no application to the case at bar. Moreover, the Minnesota statute demonstrates that if our Legislature had intended to allow MERS to foreclose by advertisement, they could readily [*19] have passed a statute including language like that included in Minnesota.

## D. ANALYSIS BEYOND THE LANGUAGE OF THE STATUTE

Plaintiffs suggest that, despite the plain language of the statute, the Legislature did not create three discrete categories of entities that could foreclose by advertisement. Instead, plaintiffs assert that the Legislature envisioned a *continuum* of entities: those that actually own the loan, those that service the loan, and some ill-defined category which might be called "everything in between." However, [HN7] courts may not "rewrite the plain statutory language and substitute our own policy decisions for those already made by the Legislature." *DiBenedetto v West Shore Hosp, 461 Mich 394, 405; 605 NW2d 300 (2000).* Thus, without any language in the statute providing for a "continuum," let alone an analysis of what it constitutes, we find no merit

in this position.

Plaintiffs also raise a straw man argument by citing this Court's decision in *Davenport v HSBC Bank USA, 275 Mich App 344; 739 NW2d 383 (2007)* where we observed that "[o]ur Supreme Court has explicitly held that '[o]nly the record holder of the mortgage has the power to foreclose' under *MCL 600.3204." Davenport, 275 Mich App at 347,* [*20] quoting *Arnold v DMR Financial Services, Inc (After Remand), 448 Mich 671, 678; 532 NW2d 852 (1995).* However, the facts in *Davenport* do not reflect that the party who held the note was a different party than the party who was the mortgagee. *Davenport, 275 Mich App at 345.* Indeed, the fact that the Court used the term "mortgage" interchangeably with "indebtedness," *id. at 345-347,* rather than distinguishing the two terms, indicates that the same party held both the note and the mortgage. Because the instant cases involve a situation where the noteholder and mortgage holder are separate entities, the general proposition set forth in *Davenport* does not apply. There is nothing in *Davenport* holding that a party that owns only the mortgage and not the note has an ownership interest in the debt. [6]

> 6  In addition, while we reject plaintiffs' overly broad reading of *Davenport* for the reasons just stated, we note that even under that reading, plaintiffs would merely have to obtain assignment of the mortgage from MERS prior to initiating foreclosure proceedings.

We also note that *Arnold,* the Supreme Court case relied upon in *Davenport,* was interpreting a previous version of *MCL 600.3204,* which was [*21] substantially revised when the Legislature adopted the version we must apply in this case. The statute as it existed when *Arnold* was decided included a provision stating:

> To entitle any party to give a notice as hereinafter prescribed, and to make such a foreclosure, it shall be requisite:
>
> * * *
>
> (3) That the mortgage containing such power of sale has been duly recorded; and if it shall have been assigned that all the assignments thereof shall have been recorded. [*Arnold, 448 Mich at 676.*]

This requirement, that a noteholder could only foreclose by advertisement if the mortgage they hold is duly recorded, is no longer part of the statute and does not apply in this case. The version of the statute interpreted in *Arnold* also lacked the language, later adopted, and operative in this case, specifically permitting foreclosure by advertisement of the owner of the note. Moreover, the language the Legislature chose to adopt in the amended language appears to reflect an intent to protect borrowers from having their mortgages foreclosed upon by advertisement by those who did not own the note because it would put them at risk of being foreclosed but still owing the noteholder the full amount of the [*22] loan.

[HN8] Under *MCL 440.3602*, an instrument is only discharged when payment is made "to a person entitled to enforce the instrument." Those parties listed in *MCL 600.3204(1)(d)*-the servicer, the owner of the debt, or someone owning an interest in the debt-would all be persons entitled to enforce the instrument that reflects the indebtedness. As previously noted, MERS is not entitled to enforce the note. Thus, if MERS were permitted to foreclose on the properties, the borrowers obligated under the note would potentially be subject to double-exposure for the debt. That is, having lost their property to MERS, they could still be sued by the noteholder for the amount of the debt because MERS does not have the authority to discharge the note. MERS members may agree to relinquish the right of collection once foreclosure occurs, but even if they were to do so within MERS, that would not necessarily protect the borrower in the event a lender violated that policy or the note was subsequently transferred to someone other than the lender. [7]

    [7]     The dissent's observation that, had Homecomings remained the mortgagee, it would have had the right to foreclose by advertisement does not change the outcome because [*23] the statutory language provides that it is Homecomings' additional status as the *noteholder* that would give it that right. The question before us is whether a mortgagee that is *not* a noteholder has the right to foreclose by advertisement.

These risks are, however, not present in a judicial foreclosure. *MCL 600.3105(2)* provides:

    [HN9] After a complaint has been filed to foreclose a mortgage on real estate or land contract, while it is pending and after

a judgment has been rendered upon it, no separate proceeding shall be had for the recovery of the debt secured by the mortgage, or any part of it, unless authorized by the court.

Thus, [HN10] once a judicial foreclosure proceeding on the mortgage has begun, a subsequent action on the note is prohibited, absent court authorization, thereby protecting the mortgagor from double recovery. See *Church & Church Inc v A-1 Carpentry, 281 Mich. App. 330, 341-342, 766 NW2d 30 (2008)*, aff'd in part, vacated in part, and aff'd on other grounds in part, *483 Mich. 885, 759 N.W.2d 877 (2009)*; *United States v Leslie, 421 F2d 763, 766 (CA6, 1970)* ("[I]t is the purpose of the statute to force an election of remedies which if not made would create the possibility that the mortgagee could [*24] foreclose the mortgage and at the same time hold the maker of the note personally liable for the debt.").

Given that this risk of double-exposure only occurs where the mortgage holder and the noteholder are separate, [HN11] the Legislature limited foreclosure by advertisement to those parties that were entitled to enforce the debt instrument, resulting in an automatic credit toward payment on the instrument in the event of foreclosure. [8]

    [8]     The dissent's assertion that *MCL 600.3105(2)* provides for an election of remedies that prevents this double recovery is erroneous, because that statute governs only judicial foreclosures, not foreclosures by advertisement. *MCL 600.3105(2)* requires the filing of a complaint, something that does not occur in foreclosure by advertisement. Absent the complaint, there is no time during which a complaint would be "pending" or any judgment that could be "rendered upon it" that would prohibit the filing of any "separate proceeding . . . for the recovery of the debt secured by the mortgage." See also *Cheff v Edwards, 203 Mich App 557, 560; 513 NW2d 439 (1994)* (holding that "foreclosure by advertisement is not a judicial action"). Consequently, the prohibitions expressed [*25] in *MCL 600.3105(2)* would not apply to foreclosure by advertisement and, therefore, would not protect borrowers from double recovery is MERS were permitted to foreclose by advertisement.

2011 Mich. App. LEXIS 719, *25

While MERS seeks to blur the lines between itself and the lenders in this case in order to position itself as a party that may take advantage of the restricted tool of foreclosure by advertisement, it has, in other cases, sought to clearly define those lines in order to avoid the responsibilities that come with being a lender. For example, in *MERS v Neb Dep't of Banking and Fin, 270 Neb 529; 704 NW2d 784 (2005)*, the Nebraska Department of Banking and Finance asserted that MERS was a mortgage banker and, therefore, subject to licensing and registration requirements. *Id. at 530*. MERS successfully maintained that it had nothing to do with the loans and did not even have an equitable interest in the property, holding only "legal title to the interests granted by Borrower." *Id. at 534*. The court accepted MERS argument that it is not a lender, but merely a shell designed to make buying and selling of loans easier and faster by disconnecting the mortgage from the loan. *Id. at 535*. Having separated the mortgage [*26] from the loan, and disclaimed any interest in the loan in order to avoid the legal *responsibilities* of a lender, MERS nevertheless claims in the instant case that it can employ the *rights* of a lender by foreclosing in a manner that the statute affords only to those mortgagees who also own an interest in the loan. But as the Nebraska court stated in adopting MERS argument, "MERS has no independent right to collect on any debt because MERS itself has not extended any credit, and none of the mortgage debtors owe MERS any money." *Id. at 535*

The separation of the note from the mortgage in order to speed the sale of mortgage debt without having to deal with all the "paper work" of mortgage transfers appears to be the sole reason for MERS' existence. The flip side of separating the note from the mortgage is that it can slow the mechanism of foreclosure by requiring judicial action rather than allowing foreclosure by advertisement. To the degree there were expediencies and potential economic benefits in separating the mortgagee from the noteholder so as to speed the sale of mortgage-based debt, those lenders that participated were entitled to reap those benefits. However, it is no less true [*27] that, to the degree that this separation created risks and potential costs, those same lenders must be responsible for absorbing the costs.

III. CONCLUSION

Defendants were entitled to judgment as a matter of law because, pursuant to *MCL 600.3204(1)(d)*, MERS did not own the indebtedness, own an interest in the indebtedness secured by the mortgage, or service the mortgage. MERS' inability to comply with the statutory requirements rendered the foreclosure proceedings in both cases void *ab initio*. Thus, the circuit courts improperly affirmed the district courts' decisions to proceed with eviction based upon the foreclosures of defendants' properties.

In both Docket No. 290248 and 291443, we reverse the circuit court's affirmance of the district court's orders, vacate the foreclosure proceedings, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendants, as the prevailing parties, may tax costs. *MCR 7.219(A)*.

/s/ Douglas B. Shapiro

/s/ Deborah A. Servitto

**DISSENT BY:** Kurtis T. Wilder

**DISSENT**

WILDER, J. (*dissenting*).

Because I conclude that, pursuant to *MCL 600.3204(1)(d)*, Mortgage Electronic Registration System (MERS) was "the owner . . . of an interest in the indebtedness [*28] secured by the mortgage" at issue in each of these consolidated cases, I respectfully dissent.

I.

Defendant Gerald Saurman (Saurman) and defendant Corey Messner (Messner) executed promissory notes in exchange for loans from Homecomings Financial Network (Homecomings). To secure the repayment of the loans, Saurman and Messner executed mortgage agreements that encumbered the properties purchased with the money loaned to them by Homecomings. The mortgage agreements provided that MERS, "solely as the nominee for [Homecomings], its successors and assigns," was the mortgagee under each Security Instrument, and held the legal interests to the properties, and that MERS' interests under each Security Instrument, as nominee for Homecomings, included the right to foreclose and sell the properties. The mortgage agreements also provided that MERS had the obligation "to take any action required of [Homecomings], including, but not limited to, releasing and canceling" the Security Instruments. Though it was

not the mortgagee, as the Lender, Homecomings retained an equitable interest in the mortgages.

Both Saurman and Messner defaulted on their payments, and MERS initiated non-judicial foreclosure by [*29] advertisement under *MCL 600.3201 et seq.* MERS purchased the properties in sheriffs' sales, and subsequently, quitclaimed Saurman's property to Residential Funding Co, LLC (RFC), and Messner's property to Bank of New York Trust Co (BNYT). After the redemption periods expired, RFC and BNYT each sought to obtain possession of the respective properties. During eviction proceedings, Saurman and Messner challenged the foreclosure by MERS, asserting that MERS was not the servicing agent, did not own the indebtedness secured by the mortgage, and did not own an interest in the indebtedness secured by the mortgage as required by *MCL 600.3204(1)(d)*. These arguments were rejected by both the district courts and the circuit courts, and this Court granted leave to appeal.

II.

This Court reviews de novo a summary disposition ruling and a circuit court's affirmance of a district court's ruling on a motion for summary disposition. *Thorn v Mercy Mem Hosp Corp, 281 Mich App 644, 647; 761 NW2d 414 (2008); First of America Bank v Thompson, 217 Mich App 581, 583; 552 NW2d 516 (1996).* Issues of statutory construction are questions of law, which this Court reviews de novo on appeal. *Washington v Sinai Hosp of Greater Detroit, 478 Mich 412, 417; 733 NW2d 755 (2007).* [*30] Statutory construction discerns and gives effect to the Legislature's intent. *Potter v. McLeary, 484 Mich. 396, 410; 774 N.W.2d 1 (2009).* In determining that intent, the court first looks to the language of the statute. *Id.* The interpretation of the language must accord with the legislative intent. *Bush v Shabahang, 484 Mich 156, 167; 772 NW2d 272 (2009).* As far as possible, the court gives effect to every phrase, clause, and word in the statute. *Id.* "The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *Id.* (quotation marks and citations omitted). Courts read a statute as a whole, and individual words and phrases, while important, are read in the context of the entire legislative scheme. *Id.*

"The interpretation of a contract is also a question of law this Court reviews de novo . . . ." *DaimlerChrysler Corp v G Tech Professional Staffing, Inc, 260 Mich App 183, 184-185; 678 NW2d 647 (2003).* A contract must be interpreted according to its plain and ordinary meaning. *Holmes v Holmes, 281 Mich App 575, 593; 760 NW2d 300 (2008).*

> Under ordinary contract principles if contractual language is clear, construction [*31] of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations [or the provisions irreconcilably conflict with each other], factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. *Meagher v Wayne State Univ, 222 Mich App 700, 721-722; 565 NW2d 401 (1997);* see also *Shaw v City of Ecorse, 283 Mich App 1, 22; 770 NW2d 31 (2009).*

A court may not rewrite clear and unambiguous language under the guise of interpretation. *Woodington v Shokoohi, 288 Mich App 352, 374; 792 NW2d 63 (2010).* Rather, "courts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc, 468 Mich 459, 468; 663 NW2d 447 (2003).*

III.

*MCL 600.3204* provides, in relevant part:

> (1) . . . a party may foreclose a mortgage by advertisement if all of the following circumstances exist:

> (a) A default in a condition of the mortgage has occurred, by which [*32] the power to sell became operative.

> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or

proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.

(c) The mortgage containing the power of sale has been properly recorded.

(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

There are three categories of parties who may foreclose by advertisement under *MCL 600.3204(1)(d)*: (1) the owner of the indebtedness secured by the mortgage; (2) the servicing agent of the mortgage; and (3) the owner of *an interest* in the indebtedness secured by the mortgage. Because we must give meaning to each of these phrases and each word in the phrases in order to give effect to the Legislature's intent, *Bush v Shabahang, 484 Mich at 167*, it is clear that, the owner of an interest in the indebtedness secured by the mortgage, while accorded the same right [*33] to foreclose by advertisement, is a different person or entity, than either the owner of the indebtedness secured by the mortgage or the servicing agent of the mortgage. To "own" means "[t]o have good legal title; to hold as property; to have a legal or rightful title to." Black's Law Dictionary (6th ed), p 1105. "Owner" is defined as, "[the] person in whom is vested the ownership, dominion or title of property; proprietor. He who has dominion as a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy it, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right." *Id.* Indebtedness is defined as "[t]he state of being in debt" or "the owing of a sum of money upon a certain and express agreement." *Id.* at 768. The indebtedness secured by the mortgages are, in these cases, the promissory notes signed by Saurman and Messner. Thus, the owner of the indebtedness secured by the mortgage owns the debt or the notes. In these cases, the owner of the indebtedness is Homecomings.

The signature questions presented in these cases are what it means to own "an interest" in the [*34] indebtedness secured by the mortgage, i.e., to own an interest in the debt or the note, as opposed to owning the debt or the note, and what entity or person the Legislature meant to refer to when it permitted "the owner of an interest in the indebtedness secured by the mortgage" to have the same ability as the owner of the debt and the servicer of the mortgage to foreclose by advertisement. In general,

The right to foreclosure by advertisement is statutory. *Calaveras Timber Co v Michigan Trust Co, 278 Mich 445, 450; 270 NW 743 (1936)*. Such foreclosures are a matter of contract, authorized by the mortgagor, and ought not to be hampered by an unreasonably strict construction of the law. *Cramer v Metropolitan Sav and Loan Ass'n, 401 Mich 252, 261; 258 NW2d 20 (1977)*. Harsh results may and often do occur because of mortgage foreclosure sales, "but we have never held that because thereof, such sale should be enjoined, when no showing of fraud or irregularity is made." *Calaveras Timber Co, [278 Mich] at 454*. [*Church & Church Inc v A-1 Carpentry, 281 Mich App 330, 339-340; 766 N.W.2d 30 (2008)*, aff'd in part and vacated in part on other grounds, *483 Mich. 885, 759 N.W.2d 877 (2009)*.]

"Interest" is defined in part as "the [*35] most general term that can be employed to denote a right, claim, title or legal share in something. . . .The word 'interest' is used in the Restatement of Property both generically to include varying aggregates of rights, privileges, powers and immunities and distributively to mean any one of them." Black's Law Dictionary (6th ed), p 812. Mortgage is defined as "an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt." *Id.*, p 1009. Notably, the mortgage operates as a conveyance of the legal title to the mortgagee, but such title is subject to defeasance on payment of the debt or performance of the duty by the mortgagor. *Id* at 1010. In other words, the mortgagee's title is defeated when the debt is paid.

I would conclude that, as mortgagee, MERS owned a contractual interest in the indebtednesss. If the indebtedness is paid in conjunction with the note, MERS has the contractual obligation to cancel the security

agreement because its title is defeated. If the indebtedness is not paid, however, MERS has the contractual right and obligation, to exercise the rights granted to it by the mortgagors, including the right to [*36] foreclose by advertisement under the statute. In other words, MERS interest in the indebtedness is derived from the fact that its contractual obligations as mortgagee were dependent upon whether the mortgagor met the obligation to pay the indebtedness which the mortgage secured.

According to the Security Instruments, MERS was the nominee of Homecomings, and held its status as mortgagee only in that capacity. "Nominee" is defined as "[a] person designated to act in place of another, usu. in a very limited way . . . [a] party who holds bare legal title for the benefit of others." Black's Law Dictionary, p 1149 (9th ed). Although Saurman and Messner agreed that MERS held "only legal title to the interest granted" in the Security Instruments, the security interest was specifically created to secure performance by Saurman and Messner of the obligation they undertook in the note, namely, to repay the debt. In other words, the security interest created was specifically linked to the debt and specifically created to ensure payment of the debt. Saurman and Messner agreed that "if necessary to comply with law or custom, MERS (as nominee for [Homecomings] . . . ha[d] the right to take any action [*37] required of [Homecomings], including, but not limited to, releasing and canceling" the Security Instruments.

By conveying the right to take *any* action required of it, Homecomings gave, and MERS received, a greater interest than just an interest in the property as security for the note, namely the contractual right to act for the benefit of Homecomings. MERS's interest in the debt reflected by the note is inextricably linked to its obligations under the mortgage. For example, if Saurman or Messner had satisfied their notes, MERS would have been obligated to cancel the Security Instruments on behalf of Homecomings. Alternatively, if Saurman and Messner had elected to sell their properties without Homecomings' prior written consent, MERS would have had the right to exercise the option to require immediate payment in full of all sums secured by the Security Instruments on behalf of Homecomings. Failure to pay in full would have then given MERS the right to invoke remedies such as foreclosure of the properties, as provided in the Security Instruments. In short, MERS

was the contractual owner of an interest in the notes, which were secured by the mortgages.

There is no dispute that, had Homecomings [*38] retained its status as mortgagee, it would have been entitled to foreclose by advertisement upon the defaults by Saurman and Messner. Nothing in *MCL 600.3204* precludes a noteholder-mortgagee from delegating, by contract, some of its rights and responsibilities under the statute and the mortgage, to a nominee which, while not the owner of the note, and therefore, not holding the identical interest in the note as the noteholder, nevertheless, clearly has an interest in whether the note is paid or defaulted upon. [1]

> 1    In this regard, MERS' interest in the indebtedness is similar to the interest held by one who possesses an easement right. "[A]n easement is a not a possessory right. *Terlecki v Stewart, 278 Mich App 644, 659-660; 754 NW2d 899 (2008).* Rather, "[a]n easement is, by nature, a limited property *interest*. It is a right to use the land burdened by the easement rather than a right to occupy and possess the land as does an estate owner." *Mich Dep't of Natural Res v Carmody-Lahti Real Estate, Inc, 472 Mich 359, 378-379; 699 NW2d 272 (2005)* (internal citations and punctuation omitted)(emphasis added). As one can "own" an easement right and have an interest in land without owning the [*39] land, so, too, can MERS "own" an interest in the note held by Homecomings without actually owning the note.

Finally, it bears noting that, contrary to the majority's contention that permitting MERS to foreclose by advertisement could potentially subject the mortgagors to a double-exposure for the same debt, *MCL 600.3105(2)* forces and election of remedies, such that Homecomings would be precluded from recovery of any debt secured by the mortgage if a foreclosure proceeding had already been initiated by MERS.

I would conclude that MERS did have the authority to foreclose on defendants' properties by advertisement. I would affirm in each case.

/s/ Kurtis T. Wilder